United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Linda Kennedy, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 17–60110-Civ-Scola |
| Marcel Deschenes, and others, | ) |
| Defendants. | ) |

**Order on Defendants' Motions to Dismiss**

The Plaintiff, proceeding pro se, brings this lawsuit against Defendants Marcel Deschenes, Michael Deschenes, and three "John Doe" Defendants for claims arising out of a contract that she entered into with Marcel Deschenes to purchase a mobile home. This matter is before the Court on the Defendants' Motion to Dismiss (ECF No. 8). For the reasons set forth in this Order, the Court **grants** the Motion to Dismiss (ECF No. 8).

1. **Background**

Plaintiff Linda Kennedy contracted to purchase a mobile home owned by Marcel Deschenes in Margate, Florida. (Compl. ¶ 4, ECF No. 1.) The land on which the mobile home sits is owned by Coral Cay Plantation and is rented by the owner of the mobile home. (*Id.* ¶ 6.) Kennedy alleges that before she contracted to purchase the mobile home, Marcel Deschenes completed several renovations on the mobile home. (*Id.* ¶¶ 52-55.)

Kennedy alleges that the contract to purchase the mobile home was "executed orally over the telephone on or about June 22, 2016 in Palm Beach County, and then in writing and in person in Margate, Florida, on or about June 30, 2016. . . ." (*Id.* ¶ 4.) Kennedy alleges that during the June 22, 2016 phone conversation she asked Marcel Deschenes and his brother, Michael Deschenes, if they had procured permits for the work that they had performed on the mobile home, if they had used licensed contractors for the work, and if they were flipping the house. (*Id.* ¶¶ 53-54, 57.) The Defendants allegedly responded that they had procured the proper permits for the work, that they had used licensed contractors, and that they were not flipping the house. (*Id.* ¶¶ 53, 55, 57.) Kennedy alleges that she asked the Defendants whether they knew of anything wrong with the house. (*Id.* ¶ 61.) The Defendants allegedly told her that one of the sinks was not properly connected to the pipes, but said that they would send a contractor out to fix it. (*Id.* ¶ 62.) Kennedy alleges that they never sent anyone out to fix the sink. (*Id.* ¶ 63.)

Kennedy alleges that she and the Defendants agreed to the following terms for the sale of the mobile home during their phone conversation: (1) Kennedy would pay $47,000 for the mobile home, with a down payment of $8,000; (2) Kennedy would move into the mobile home on or after July 1, 2016, and would pay the rent for the land through January 2017; (3) all personal items on the premises were included in the sale price, with the exception of Marcel Deschenes's motorcycle; and (4) the Defendants would mail a copy of the title to the mobile home to the Plaintiff for her records, and would mail the original title at the time that the sale closed. (*Id.* ¶ 64.)

Kennedy alleges that on or about June 30, 2016, one of the Defendants and a woman appeared at the mobile home with a written agreement that contained terms that differed from the terms she had agreed to during the June 22, 2016 phone conversation. (*Id.* ¶ 67.) Kennedy alleges that she "had to agree to the new contract even though it was more restrictive against her" because she had already made plans to move into the mobile home. (*Id.* ¶¶ 69-70.) Kennedy attached the written contract to the Complaint as an exhibit. (*Id.* at 37.) The contract stated that Kennedy would give Marcel Deschenes $8,000 on June 28, 2016, and would pay the remaining balance of $39,000 within 6 months. (*Id.*) The contract stated that Kennedy would pay the rent for the land from July 1, 2016 through January 2017, and that all personal items on the premises were included in the price, except for Marcel Deschenes's personal clothes and motorcycle. (*Id.*) The contract stated, "There is [sic] no guarantees on the house, the equipment, all items no guarantee." (*Id.*) Finally, the contract stated that Kennedy had to "give a proof of the insurance of the house to Marcel until the purchased [sic] by Lea in six month [sic]." (*Id.*)

Kennedy alleges that the contract required her to keep the furniture in the mobile home that was already there, and that as a result she had to get rid of her own furniture. (*Id.* ¶¶ 73, 75.) Kennedy paid the down payment in the amount of $8,000 and moved into the mobile home in July 2017. (*Id.* ¶¶ 81, 87.) Kennedy alleges that she paid the rent for the land and the utilities through January 2017. (*Id.* ¶¶ 91-93.)

At some point after moving into the mobile home, Kennedy discovered that Marcel Deschenes had not obtained any permits for the renovations on the mobile home, and that Marcel and his brother Michael, along with two "Canadian associates," performed the work, not licensed contractors. (*Id.* ¶¶ 104, 107-108.) Kennedy alleges that she could not get insurance for the property because there were no permits for the renovations that had been completed. (*Id.* ¶ 115.) Kennedy also alleges that she will not be able to get permits for the additional remodeling that she planned to do because she will be responsible for "$40,000-$50,000 in remediation, penalties, fines and so forth." (*Id.* ¶ 118-119.) Finally, Kennedy alleges that the Defendants have told

her that they are trying to sell the house to another buyer, that they would like her to move out, and that they plan to keep her down payment. (*Id.* ¶¶ 131, 135, 140-142.)

The Complaint asserts causes of action for fraud in the inducement, fraud, negligent fraud, conspiracy to commit fraud, violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), breach of contract, breach of implied warranty, tortious interference with contract and with a business relationship, specific performance, civil theft, and unjust enrichment. The Defendants have moved to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## 2. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(1)

A district court must have at least one of three types of subject-matter jurisdiction: (1) jurisdiction pursuant to a specific statutory grant; (2) federal question jurisdiction; or (3) diversity jurisdiction. *Butler v. Morgan*, 562 Fed. App'x. 832, 834 (11th Cir. 2014) (citations omitted). "The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). "[F]ederal courts always have an obligation to examine *sua sponte* their jurisdiction before reaching the merits of any claim." *Kelly v. Harris*, 331 F.3d 817, 819 (11th Cir. 2003) (citing *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n. 9 (11th Cir. 1993)).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge, may be alleged generally. Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citations omitted). To meet this standard, a complaint needs to identify the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud. *Id.*

Complaints filed by pro se litigants are held to "'less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1979) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). However, "the leniency afforded pro se litigants does not give courts license to serve as de facto counsel or to rewrite an otherwise deficient pleading in order to sustain an action." *Shuler*, 2011 WL 4495624, at *6 (citation omitted).

### 3. Analysis

#### A. Lack of Subject Matter Jurisdiction

The Complaint alleges that diversity jurisdiction exists. (Compl. ¶ 3, ECF No. 1.) Diversity jurisdiction exists where the matter in controversy exceeds $75,000 and the action is between parties that are diverse in citizenship. 12 U.S.C. § 1332(a). The Defendants do not dispute that the parties are diverse, but they dispute that the amount in controversy exceeds $75,000. (Mot. to Dismiss at 7, ECF No. 8.)

District courts "will not dismiss a case for lack of subject matter jurisdiction under the diversity statute unless it appears to a legal certainty that plaintiff's claim is actually for less than the jurisdictional amount."

*Broughton v. Florida Intern. Underwriters, Inc.*, 139 F.3d 861, 863 (11th Cir. 1998) (internal quotations omitted) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1094 (11th Cir. 1994)). State law is relevant to the determination of the amount in controversy if state law defines the nature and extent of the rights that the plaintiff seeks to enforce. *Id.* (citing *Duderwicz v. Sweetwater Sav. Ass'n*, 595 F.2d 1008, 1012 (5th Cir. 1979)).

The factual allegations in the Complaint are confusing concerning the amount of damages that the Plaintiff has suffered. However, most of the counts in the Complaint claim $69,950 in damages plus the rent that the Plaintiff has paid since February 2017, plus punitive damages. (Compl. at 20, ECF No. 1.) The Defendants argue that the Court cannot consider punitive damages in its calculation of the amount in controversy because Florida law requires that a plaintiff obtain leave of court in order to assert a claim of punitive damages. (Mot. to Dismiss at 7, ECF No. 8.) However, the Eleventh Circuit has held that "a Florida plaintiff in federal court because of diversity jurisdiction need not obtain leave of court before pleading a request for punitive damages." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000) (citations omitted). Therefore, the amount in controversy exceeds $75,000 and the Court has subject matter jurisdiction.

### B. Failure to State a Claim Upon Which Relief Can Be Granted

#### *(1) Fraud-Based Claims*

Counts One, Two, Three, and Eight of the Complaint assert claims for fraud in the inducement, common-law fraud, negligent fraud, and conspiracy to commit fraud, respectively. Florida law requires that a plaintiff allege the following elements to sustain a claim of fraud or fraud in the inducement: (1) a false statement regarding a material fact; (2) the statement maker's knowledge that the representation is false; (3) the statement maker's intent to induce the plaintiff to act in reliance on the false statement; and (4) injury to the plaintiff as a result of the plaintiff's justifiable reliance on the representation. *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1029-30 (11th Cir. 2017) (citations omitted) (setting forth elements for a claim of fraud in the inducement); *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007) (citing *Wadlington v. Cont'l Med. Servs., Inc.*, 907 So.2d 631, 632 (Fla. 4th Dist. Ct. App. 2005)) (setting forth elements for a claim of fraud in the inducement); *Wadlington*, 907 So.2d at 632 (setting forth elements for a claim of fraud).

The Defendants assert that Kennedy is barred from arguing that any guarantees regarding the improvements to the mobile home constituted misrepresentations because the written contract that Kennedy signed stated

that there were no guarantees on the house. (Mot. to Dismiss at 10-11, ECF No. 8.) Under Florida law, "[a] party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Hillcrest Pacific Corp., et. al. v. Yamamura, et al.*, 727 So.2d 1053, 1056 (Fla. 4th Dist. Ct. App. 1999) (citations omitted) (affirming dismissal of the plaintiffs' case because although the plaintiffs claimed that the defendant misrepresented the sale price of the property, the price was clearly stated in the sale agreement); *see also TRG Night Hawk Ltd. v. Registry Dev. Corp.*, 17 So.3d 782, 784 (Fla. 2d Dist. Ct. App. 2009) (holding that the plaintiff could not have justifiably relied on any representations from the defendant concerning governmental approvals when the terms of the contract stated that the defendant made no representations regarding governmental approvals); *Englezios v. Batmasian*, 593 So.2d 1077 (Fla. 4th Dist. Ct. App. 1992) (affirming dismissal of the plaintiff's claim that the landlord fraudulently misrepresented that there was sufficient parking available to enable the tenant to obtain government approval to operate a restaurant because the lease stated that its validity was contingent on the tenant receiving approval to operate the restaurant and gave the tenant the right to terminate the lease if he could not get the approval by a certain time). Such claims are not barred as a matter of law, but Florida courts have held that such claims lack merit because reliance on representations that are contradicted by the terms of the contract is unreasonable. *See Global Quest,* 849 F.3d at 1028-29.

Here, the written contract specifically stated "There is [sic] no guarantees on the house, the equipment, all items no guarantee." (Compl. at 37, ECF No. 1.) This explicitly contradicts any representations that the Defendants allegedly made concerning the renovations that had been performed on the house. Kennedy alleges that she read the written contract when it was presented to her, that she knew that the terms were "more restrictive against her," and she specifically acknowledges that the contract "stated in writing that [Marcel Deschenes] was not guaranteeing the property." (*Id.* ¶¶ 68-72.) Therefore, the factual allegations in the Complaint are insufficient to sustain Kennedy's fraud-based claims because the allegations demonstrate that Kennedy's reliance on the Defendants' alleged misrepresentations was unreasonable. Since the fraud-based claims fail, the conspiracy claim also fails. *See Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1067 (11th Cir. 2007) (citations omitted) ("a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim."). The Court dismisses Counts One, Two, Three, and Eight of the Complaint with prejudice.

### *(2) FDUTPA Claim*

Count Four of the Complaint alleges that the Defendants engaged in a deceptive act or unfair practice in violation of FDUTPA. (Compl. at 23, ECF No. 1.) The goal of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). An FDUTPA claim requires that the plaintiff allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *City First Mortg. Corp. v. Barton*, 988 So.2d 82, 86 (Fla. 4th Dist. Ct. App. 2008) (holding that inability to close on a loan due to alleged deceptive acts or unfair practices of the defendant did not constitute actual damages under FDUTPA). Under FDUTPA, a deceptive act is "one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Hennegan Co. v. Arriola*, 855 F.Supp.2d 1354, 1360-61 (S.D. Fla. 2012) (King, J.) (quoting *Washington v. LaSalle Bank Nat'l Ass'n*, 817 F.Supp.2d 1345, 1350 (S.D. Fla. 2011) (Seitz, J.)). Florida courts have held that "a party who signs a contract whose terms contradict the alleged misrepresentations on which he relied is barred from seeking relief pursuant to FDUTPA, as he acted unreasonably." *TRG Night Hawk*, 17 So.3d at 784 (internal quotations omitted) (citing *Rosa v. Amoco Oil Co.*, 262 F.Supp.2d 1364, 1368 (S.D. Fla. 2003)). As explained above, the terms of the written contract explicitly contradicted the representations that the Defendants allegedly made concerning the renovations to the property. Therefore, the Court dismisses the FDUTPA claim with prejudice.

### *(3) Breach of Contract Claim*

Although the Defendants did not move to dismiss Count Five of the Complaint, which asserts a claim for breach of contract, the Court *sua sponte* dismisses Count Five. Under Florida law, the elements required to establish a breach of contract claim are: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4th Dist. Ct. App. 2008)).

The Complaint alleges that "Deschenes is breaching the contract and is attempting to sell the Mobile Home out from under Plaintiff. This anticipatory breach and frustration of purpose. . .is what brings Plaintiff to this court." (Compl. ¶¶ 8-9, 98, ECF No. 1.) Under Florida law, "a party's anticipatory repudiation of a contract alone does not entitle the nonbreaching party to damages. To be entitled to damages based upon an anticipatory breach, the nonbreaching party must establish its ability to perform at the time of the

breach." *Ryan v. Landsource Holding Co., LLC*, 127 So.3d 764, 768 (Fla. 2d Dist. Ct. App. 2013) (citations omitted); *see also Hosp. Mortg. Grp. v. First Prudential Dev. Corp.*, 411 So.2d 181, 182-83 (Fla. 1982) (holding that although an anticipatory breach excuses the non-breaching party from performance, it does not entitle the nonbreaching party to damages). The Florida Supreme Court has noted that "The holder of the duty based upon a condition precedent cannot profit from an anticipatory repudiation of a contract that he would have breached himself." *Hosp. Mortg. Grp.*, 411 So.2d at 183.

Under the terms of the written contract, the only remaining obligation on the part of Marcel Deschenes is to mail the original deed to Kennedy when the property is purchased in full. (Compl. at 37, ECF No. 1.) The contract required Kennedy to pay the outstanding balance of $39,000 to Marcel Deschenes "within 6 months," which would have been December 30, 2016. (*Id.*) Kennedy has not alleged that she paid the outstanding balance of the sale price, and therefore she has not satisfied the condition precedent that would trigger Marcel Deschenes's obligation to provide her with the deed to the mobile home. Indeed, the Complaint specifically states that Kennedy wants to purchase the house but only "legally and without having to potentially pay twice as much for the house due to no permits." (*Id.* ¶ 162.) The factual allegations in the Complaint demonstrate that Kennedy is not willing to perform her contractual obligations under the current circumstances. Therefore, the Court dismisses the breach of contract claim with prejudice.

The Court notes that the Plaintiff's response to the Motion to Dismiss argues that she signed the contract under duress, and that a court may set aside or modify an agreement that was signed "under fraud, deceit, duress, or coercion. . . ." (Mot. in Opp. at 19, ECF No. 23.) However, the Complaint does not assert any claims related to duress, nor does the Complaint ask the Court to set aside the written agreement; rather, the Complaint asks the Court to order specific performance of the contract. (Compl. at 29, ECF No. 1.)

### *(4) Breach of Warranty Claims*

Count Six of the Complaint asserts a claim for breach of implied warranty of fitness, merchantability, and habitability under the Uniform Commercial Code ("UCC"), and Count Seven of the Complaint asserts a claim for common law breach of implied warranty of fitness, merchantability, and habitability. (Compl. at 24-26, ECF No. 1.) Kennedy's breach of warranty claims fail because Florida does not recognize implied warranties in connection with the sale of existing homes. *Maronda Homes, Inc. of Florida v. Lakeview Reserve Homeowners Ass'n, Inc.*, 127 So.3d 1258, 1264-65 (Fla. 2013) (noting that Florida courts historically have not recognized or applied implied warranties to real property transactions, but noting that in 1972 the Florida

Supreme Court held that implied warranties of fitness and merchantability applied to the purchase of new homes and condominiums); *see also Solomon v. Gentry*, 388 So.2d 52 (Fla. 4th Dist. Ct. App. 1980) (holding that a landlord could not be liable to a tenant renting a mobile home that had attained the status of real property for breaches of implied warranties of fitness and merchantability). Therefore, the Court dismisses Counts Six and Seven of the Complaint with prejudice.

### *(5) Tortious Interference Claims*

Counts Nine and Ten of the Complaint assert claims of tortious interference with a contract and tortious interference with a business relationship against Michael Deschenes. (Compl. at 27-28, ECF No. 1.) Under Florida law, a claim of tortious interference with a contractual relationship requires proof of the following elements: (1) the existence of a business relationship under which the claimant has rights, (2) the defendant's knowledge of the relationship, (3) an intentional and unjustified interference with the relationship, and (4) damage to the claimant caused by the interference. *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). "For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385–86 (Fla. 4th Dist. Ct. App. 1999).

Florida courts have held that the plaintiff must prove that the third party interfered with a contract by "influencing, inducing or coercing one of the parties to . . . breach the contract, thereby causing injury to the other party." *Farah v. Canada*, 740 So.2d 560, 561 (Fla. 5th Dist. Ct. App. 1999) (internal quotations and citations omitted) (noting that Black's Law Dictionary defines "induce" as "to bring on or about, to affect, cause, to influence to an act or course of conduct, lead by persuasion or reasoning, incite by motives, prevail on"); *see also Mortg. Now, Inc. v. Guaranteed Home Mortg. Co., Inc.*, 545 Fed. App'x. 809, 811 (11th Cir. 2013) (quoting *Fiberglass Coatings, Inc. v. Interstate Chem., Inc.*, 16 So.3d 836, 838 (Fla. 2d Dist. Ct. App. 2009) (the defendant must "manifest a specific intent to interfere with the business relationship. No liability will attach unless it is established that the defendant intended to procure a breach."). As a result, courts have held that when a party to a contract was predisposed to breach the contract, a third party's actions cannot have induced the breach. *Mortg, Now, Inc.*, 545 Fed. App'x. at 811; *Fiberglass Coatings, Inc. v. Interstate Chem., Inc.*, 16 So.3d 836, 838 (Fla. 2d. Dist. Ct. App. 2009) (finding no tortious interference in covenant not to compete by employee's new employer because employee was predisposed to breach the covenant); *Farah v. Canada*, 740 So.2d at 562 (holding that the defendant's

predisposition to breach her contract with the plaintiff precluded any finding that she was induced to breach by a third party).

The factual allegations in the Complaint are sufficient to establish that Michael Deschenes knew of the contractual relationship between Kennedy and Marcel Deschenes. In addition, Kennedy has generally alleged that "Descheneses (sic) and Michael additionally frustration (sic) the purpose against Plaintiff, hindering her ability to close on the contract, due to the bad acts of all Defendants at various times." (Compl. ¶ 14, ECF No. 1.) However, the only specific action taken by Michael Deschenes that Kennedy has identified is: "Michael regularly uses the first person when he speaks and negotiates for his own interests. . . ." (Compl. ¶ 170, ECF No. 1.) This is insufficient to allege that Michael Deschenes unjustifiably and intentionally interfered with Kennedy's business relationship with Marcel Deschenes. Furthermore, Kennedy appears to allege that the Defendants acted in concert to breach the contract, not that Michael Deschenes *induced* Marcel Deschenes to breach the contract. Therefore, the Court dismisses Counts Nine and Ten of the Complaint without prejudice.

### *(6) Specific Performance*

Count Eleven of the Complaint asserts a claim for specific performance. (Compl. at 29-31, ECF No. 1.) Kennedy requests that: (1) she be allowed to purchase the home for $500, which is the price that she alleges Marcel Deschenes paid for it; (2) the Court order Deschenes to "remediate with equal quality products, or better if they do not comply with code, at his own expense with Plaintiff's contractors;" (3) that Marcel Deschenes be required to return to the Plaintiff all funds that she has spent "in reliance on contract," and (4) Deschenes reimburse her for the rent that she has paid. (*Id.* at 30.)

Specific performance "is an equitable remedy not granted as a matter of right or grace but as a matter of sound judicial discretion governed by legal and equitable principles." *Castigliano v. O'Connor*, 911 So.2d 145, 148 (Fla. 3d Dist. Ct. App. 2005) (internal quotations omitted) (citing *Humphrys v. Jarrell*, 104 So.2d 404, 410 (Fla. 2d Dist. Ct. App. 1958)). Specific performance may only be granted if: (1) the plaintiff is "clearly entitled to it," (2) there is no adequate legal remedy, and 3) the judge believes that justice requires it. *Id.* (citations omitted). Since specific performance is an equitable remedy, a purchaser must be able to show that it will not be unjust or oppressive on the seller to have the contract enforced. *Id.* at 150 (citations omitted). In addition, as a condition precedent to an award of specific performance, the plaintiff must prove that he or she either paid the contract sum; tendered the contract sum; was ready, willing and able to pay the contract sum; or was excused from doing so. *Invego Auto Parts, Inc.*

*v. Rodriguez,* 34 So.3d 103, 104-05 (Fla. 3d Dist. Ct. App. 2010) (internal quotations and citations omitted).

As noted above, Kennedy has not alleged that she is ready, willing, and able to pay the outstanding balance of the sales contract. Although Kennedy's response to the Motion to Dismiss asserts that "she has pled that she is ready, willing and able to close as per the contract," this is simply not true. (Mot. in Opp. at 5, ECF No. 23.) The Complaint specifically states that Kennedy is *not* willing to purchase the home unless the Defendants agree to pay the fines and penalties associated with the unpermitted work. Therefore, Kennedy is not entitled to specific performance.

In addition, the "specific performance" that Kennedy seeks is in no way related to the actual terms of the contract. Kennedy asserts in her response to the motion to dismiss that there are "two competing agreements with both signed under fraud in the inducement and reliance. . . ." (Mot. in Opp. at 23, ECF No. 25.) However, the Complaint only alleges that there is one contract that was signed, which was the contract attached to the Complaint as Exhibit 1. (Compl. ¶ 4, ECF No. 3.) Even if the operative contract consisted of the terms that Kennedy and the Defendants agreed to during their phone conversation, those terms as set forth in the Complaint still required Kennedy to pay an $8,000 down payment with an additional $39,000 due at closing, and required her to pay the rent on the land from July 2016 through January 2016.

Thus, it appears that Kennedy is essentially asking the Court to re-write the terms of the contract that she negotiated and order the Defendants to accept a different sales price than what Kennedy agreed to pay. There was also no provision in either the verbal or oral contract that required the Defendants to refund the rent that Kennedy paid or the down payment in the event that the contract was terminated or breached. The Court has neither the authority nor the inclination to re-write the terms of the contract that Kennedy voluntarily negotiated and signed. *See Barakat v. Broward Cnty. Housing Authority*, 771 So.2d 1193, 1195 (Fla. 4th Dist. Ct. App. 2000) (citations omitted) ("It is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain. . .A fundamental tenet of contract law is that parties are free to contract, even when one side negotiates a harsh bargain."); *see also Siever v. BWGaskets, Inc.*, 669 F.Supp.2d 1286, 1296 (M.D. Fla. 2009) (citations omitted) (noting same). Accordingly, the Court dismisses Count Ten of the Complaint with prejudice.

### *(7) Civil Theft Claim*

Count Twelve of the Complaint, which appears to have been mistakenly labeled as a second Count Nine, asserts a claim for civil theft. (Compl. at 31, ECF No. 1.) In order to establish an action for civil theft, a plaintiff must prove

the elements set forth in Florida Statute § 772.11, as well as criminal intent. *Gersh v. Cofman*, 769 So.2d 407, 409 (Fla. 4th Dist. Ct. App. 2000) (citations omitted). Pursuant to § 772.11(1), "any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained. . . ." Although Kennedy has not identified the specific section of Florida Statute § 812 on which she relies, the Court will look to § 812.014, which relates to theft, since Kennedy labeled her claim "civil theft." Section 812.014 states that "A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to" deprive the other person of a right to the property or appropriate the property to his or her own use. However, as Kennedy acknowledges in the Complaint, the mobile home is owned by Marcel Deschenes. (Compl. ¶ 5, ECF No. 1.) The Complaint contains no allegations about property other than the mobile home and Kennedy has thus failed to allege that the Defendants deprived her of property that she owns. Therefore, the Court dismisses Count Twelve of the Complaint without prejudice.

### *(8) Unjust Enrichment Claim*

Count Thirteen of the Complaint, which appears to have been mistakenly labeled as a second Count Ten, asserts a claim for unjust enrichment. (Compl. at 32, ECF No. 1.) Under Florida law, the elements of a claim for unjust enrichment are: "(1) a benefit conferred upon a defendant by the plaintiff; (2) the defendant's appreciation of the benefit; and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (quoting *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d Dist. Ct. App. 2006)). "[W]here there is an express contract between the parties, claims arising out of that contractual relationship will not support a claim for unjust enrichment." *Reese v. JPMorgan Chase & Co.*, 686 F.Supp.2d 1291, 1309 (S.D. Fla. 2009) (King, J.) (citing *Moynet v. Courtois*, 8 So.3d 377 (Fla. 3d Dist. Ct. App. 2009)).

The facts set forth in Count Thirteen mostly consist of allegations that the Defendants are defrauding other purchasers and are flipping houses. (Compl. at 32-33, ECF No. 1.) In addition, Kennedy alleges that the Defendants are violating immigration laws and defrauding the Internal Revenue Service and the "CRA." (*Id.* at 32.) These allegations are not relevant to the elements required to establish a claim for unjust enrichment. However, Kennedy does allege that she conferred a benefit on the Defendants, that there was appreciation of that benefit, and that retention of the benefit under the circumstances is inequitable. (*Id.* at 33.) Count Thirteen itself does not identify

the specific facts that support these allegations. However, the Complaint alleges that Marcel Deschenes "has kept Plaintiff's $8,000 and has not had to pay $6,032 and counting in lot rent." (Compl. ¶ 177, ECF No. 1.) Since both the $8,000 down payment and the rent were paid pursuant to the terms of the contract, the factual allegations set forth in the Complaint cannot support a claim for unjust enrichment. Accordingly, the Court dismisses Count Thirteen with prejudice.

### 4. Conclusion

Accordingly, the Court **grants** the Defendants' motion to dismiss (**ECF No. 8**). The Court dismisses Counts Nine, Ten, and Twelve of the Complaint without prejudice, and dismisses Counts One, Two, Three, Four, Five, Six, Seven, Eight, Eleven and Thirteen with prejudice. If Kennedy believes that she can correct the deficiencies in Counts Nine, Ten, and Twelve of the Complaint, she may file an amended complaint on or before **May 30, 2017**.

**Done and ordered** in chambers, at Miami, Florida, on May 19, 2017.

Robert N. Scola, Jr.
United States District Judge